Filed 11/13/13  Orange County Water Dist. v. Telex Communications Holdings CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ORANGE COUNTY WATER DISTRICT,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>TELEX COMMUNICATIONS HOLDINGS, INC.,<br><br>    Defendant and Respondent. | G047216, G047469<br><br>(Super. Ct. No. 04CC00715)<br><br>O P I N I O N |

Appeals from a judgment of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Affirmed.

Miller, Axline & Sawyer, Duane C. Miller, Michael Axline, A. Curtis Sawyer, Jr., Evan Eickmeyer; Connor, Fletcher & Williams and Edmond M. Connor for Plaintiff and Appellant.

Gordon & Rees, Jack B. McCowan, Jr., Don Willenburg and Kristin N. Reyna for Defendant and Respondent.

\*          \*          \*

This a pollution case filed by the Orange County Water District (the District) against multiple defendants. One of those defendants, Mark IV Industries, Inc. (Mark IV) settled with the District in 2011. Telex Communications Holdings, Inc. (Telex) moved for summary judgment, arguing the settlement agreement also released it from any liability. Telex argued it was a merged corporation and one of its constituent corporations was a predecessor to Mark IV and therefore included in the release. The trial court agreed and granted summary judgment, and we concur. Under the plain language of the settlement agreement, Telex was released by operation of law. We further conclude that the District's appeal of the trial court's refusal to tax Telex's costs was without merit, and therefore affirm.

I

FACTS

*A. Background*

From 1960 to 1982, Gulton Industries, Inc. (Gulton) operated a manufacturing facility in Fullerton. In 1986, Mark IV acquired Gulton, which, apparently, spun Gulton off. In 1997, Gulton merged with Electro-Voice, Inc., and continued business under the name EV International, Inc. (EVI). A year later, in 1998, EVI merged with Telex Communications, Inc., which later changed its name to Telex.

In December 2004, the District sued 11 defendants and numerous Does regarding environmental contamination at multiple sites. In the original complaint, Gulton was named as a defendant for allegedly causing contamination to the Fullerton site. Mark IV was also named as a defendant as successor in interest to Gulton due to the 1986 acquisition.

In March 2005, the District filed a Doe amendment adding Telex to the case as "Telex Communications Holdings, Inc., formerly known as Gulton Industries, Inc." In April 2005, the District filed an amended complaint (the complaint), which

2

alleged: "Defendant [Gulton] is a Delaware corporation with its principal place of business in Fullerton, California. From 1960 to 1982, Gulton manufactured transducers [at the Fullerton location]. . . . Plaintiff is informed that in 1986, [Mark IV] acquired Gulton and owned and operated a business at [the Fullerton location]. In 1990, Gulton reacquired the site at [the Fullerton location] and agreed to assume any liability associated with the cleanup of the property. Gulton . . . was later acquired by and merged into defendant Telex. . . . Telex is a Delaware corporation with its principal place of business in Burnsville, Minnesota and [is] doing business in California. Gulton and DOES . . . as owners and operators of the site, used TCE and PCE in manufacturing operations and stored solvent drums on the site which released hazardous waste at the site." Mark IV was separately alleged to be culpable as Gulton's owner from 1986 to 1999. In 2009, Mark IV and some of its subsidiaries and affiliates filed for bankruptcy protection in New York.

## B. The 2011 Settlement and Release

In July 2011, the District entered into a settlement agreement with Mark IV for $5 million. The recitals stated that Gulton had owned and operated the Fullerton property from 1960 to 1982, and that Mark IV acquired Gulton after operations had ceased. The District had therefore alleged in the lawsuit that "Mark IV and numerous other co-defendants are liable for contamination. . . . Mark IV's liability, which is denied by Mark IV, is allegedly a result of contamination that occurred as a result of operations at the Property and Mark IV's alleged position as successor to Gulton. OCWD has alleged that the contamination has migrated from the Property and, accordingly, that the contamination is continuing . . . ." The recitals also stated that "the Parties hereto desire to settle any and all disputes between them . . . including, without limitation, any and all matters, claims, allegations, facts and circumstances that arose in connection with or that

3

are in any way related to the Controversies whether or not asserted or raised in connection therewith . . . ."

The release included in the settlement agreement stated, in relevant part: "OCWD, on its behalf and on behalf of any other party . . . unconditionally and forever releases and discharges each of (x) Mark IV and its Affiliates (defined below), (y) each of such entities present, former, and future shareholders, partners, members, officers, directors, employees, agents, owners, investors, lenders and control persons, and (z) with respect to each of the parties immediately preceding sub-clauses (x) and (y), their heirs, agents, executors, administrators, attorneys, predecessors, successors and assigns (. . . 'the Mark IV Releasees') from any and all disputes, controversies, suits, actions, causes of action, claims . . . and obligations of any kind whatsoever, upon any legal or equitable theory . . . whether known or unknown, that the OCWD ever had, now have, or hereafter can, will or may have, from the beginning of time, against each of the Mark IV Releasees by reason of any matter . . . with respect to the Released Claims, including, without limitation, all liability associated with remediation of contamination at or from the Property or on account of the Contamination . . . ."  A Civil Code 1542 waiver was also included in the settlement agreement.

Mark IV filed a good faith settlement determination motion, which it withdrew, and then refiled the same motion.  The motion included the declaration of the District's counsel, Duane Miller, which defined Gulton as one of the Mark IV defendants, and that the settlement took into account "the Mark IV Defendants' potential share of the liability."  The trial court agreed, concluding the settlement "falls within the reasonable range" of liability for Gulton and Mark IV.  The motion was granted and Gulton and Mark IV were dismissed from the case on October 11, 2011.

*C. Telex's Motion for Summary Judgment*

On November 23, 2011, Telex filed the instant motion for summary judgment. Telex argued that it was entitled to summary judgment on its affirmative defense of release, because Telex was Gulton's successor. Therefore, by operation of law, the settlement with Gulton and Mark IV also served to release Telex. In opposition, the District argued, among other things, that Telex was not named in the release, had not contributed any funds toward the settlement, and was not Mark IV's successor under the terms of the release.

The court heard oral argument in February 2012, providing a tentative ruling to grant the motion on the grounds argued by Telex. After argument, the tentative became the court's final decision, and the court signed an amended order granting summary judgment on April 23.

*D. Telex's Costs Memorandum*

On March 23, Telex filed a costs memorandum seeking $61,256,43, most of which consisted of deposition fees. The District filed a motion to strike or tax the costs. The court found the costs memorandum had been filed prematurely because the judgment had not yet been signed and directed Telex to refile once that had occurred.

After the judgment was signed on May 25, Telex refiled its costs memorandum seeking the same amount, and the District once again filed a motion to strike or tax. Among other things, the District argued the costs memorandum was late, because Gulton had been dismissed in October 2011 and Telex should have filed its costs motion then. Telex replied that it was following the court's order with regard to the costs memorandum. On August 1, the trial court heard oral argument, with a tentative ruling to deny the motion. The District submitted on the tentative ruling.

The District filed separate notices of appeal of the judgment and of the costs award. The appeals were consolidated pursuant to stipulation.

## II

## DISCUSSION

### A. *Standard of Review on Summary Judgment*

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The trial court properly grants a motion for summary judgment if all the papers submitted establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *id.* at p. 843.)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Id.* at p. 850.)

We review the trial court's decision de novo, considering all evidence the parties offered in connection with the motion and the uncontradicted inferences the evidence reasonably supports. (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 148.)

*B. Telex's Burden of Production*

The moving party bears the initial burden of production to make a prima facie case demonstrating no material issues of triable fact exist. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) "[H]ow the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial." (*Id.* at p. 851.) When the burden of proof at trial would be the civil standard, preponderance of the evidence, "if a defendant moves for summary judgment . . . he must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not . . . ." (*Ibid.*, fn. omitted.)

Telex's primary argument is that the contractual language of the settlement agreement released the District's claims against Gulton, and therefore, as a matter of law, also released Telex. We will unpack each of these arguments separately.

*1. The District's Release of Gulton*

In support of its argument, Telex produced the settlement agreement. Whether a party is covered by the language of a release is governed by ordinary principles of contract interpretation. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 528; *General Motors Corp. v. Superior Court* (1993) 12 Cal.App.4th 435, 439.) When a contract is reduced to writing, we attempt to ascertain its intention from the writing alone. (Civ. Code, § 1639.) "The law imputes to a person an intention which corresponds to the reasonable meaning of his or her words and acts. Thus, where a person's words or acts, judged by a reasonable standard, manifest an intent to agree to a certain matter, that agreement is established, regardless of what may have been the person's real but unexpressed state of mind on the subject. [Citations.]" (*Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 560 (*Brinton*).)

As noted above, the settlement agreement stated that Gulton had owned and operated the Fullerton property from 1960 to 1982. It also stated the District's complaint had alleged that Mark IV was liable because of "Mark IV's alleged position *as successor* to Gulton." (Italics added.) The release included each of Mark IV's "predecessors, successors and assigns" from "any and all disputes, controversies, suits, actions, causes of action, claims . . . and obligations of any kind whatsoever, upon any legal or equitable theory. . . whether known or unknown, that the OCWD ever had, now have, or hereafter can, will or may have, from the beginning of time, against each of the Mark IV Releasees by reason of any matter . . . with respect to the Released Claims, including, without limitation, all liability associated with remediation of contamination at or from the Property or on account of the Contamination . . . ."

Both based on the language in the settlement agreement and extrinsic evidence, Telex established a prima facie case that Mark IV was Gulton's successor (and, obviously, Gulton was Mark IV's predecessor). The plain language of the agreement included Mark IV's predecessors within the scope of its very broad release. Therefore, Telex also satisfied its burden to demonstrate the settlement agreement released Gulton as well as Mark IV.

### 2. *Legal Impact of Releasing Gulton on Telex*

Telex next argues that if the settlement released Gulton, it released Telex as a matter of law. We examine both the evidence and the law to determine if this is so.

The evidence was undisputed that Gulton merged with EVI, which in 1998 merged with the entity that became Telex under its new name. Upon a merger, the merged corporation accepts both the assets and liabilities of the constituent corporation, and "the separate existence of the disappearing corporations ceases . . . and [the surviving corporation] shall be subject to all the debts and liabilities of each in the same manner as

8

if the surviving corporation had itself incurred them." (Corp. Code, § 1107, subd. (a); see also *Maudlin v. Pacific Decision Sciences Corp.* (2006) 137 Cal.App.4th 1001, 1016.)[1] Thus, as of the date of the merger, Gulton ceased to exist; all of its assets and liabilities belonged to Telex. Indeed, this was the District's stated rationale for alleging Telex's liability in the complaint.

Thus, when Telex argues that, as a matter of law, a release of Gulton is also a release of Telex, it is correct. In 2011, when the settlement agreement was entered into, Gulton no longer had any independent existence separate from Telex. Just as Telex was liable for Gulton's actions, it was also entitled to any legal action, such as a release, in Gulton's favor.

Therefore, we conclude that Telex satisfied its initial burden to demonstrate it was entitled to summary judgment. It established a prima facie case that the release included Gulton and that Gulton had merged into Telex into 1998.

## C. The District's Burden of Production

Because Telex met its burden of production, the burden then shifted to the District to demonstrate the existence of a triable issue of material fact as applied to the relevant law. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) The District offers several arguments, which we shall address in turn.

The District first argues that Telex is not a named party, did not contribute consideration, and did not participate in the good faith settlement proceedings.[2] Assuming all of these things are true, however, does not alter the fact that a party can be

---

[1] The same is true under Delaware law, and both Gulton and Telex were incorporated in Delaware. (8 Del. C. § 259(a).)

[2] The District also argues that Telex did not make a claim in the Mark IV bankruptcy proceedings that it was released, but we find that fact, if true, to have little relevance to whether it was covered by the release.

released without being a party to the agreement including the release. "It is not necessary that the contract identify the third party by name as long as such third party can show that it is one of a class of persons for whose benefit it was made. [Citation.] Having found that the subject release agreement does provide for the release of all tortfeasors, including General Motors, it follows that General Motors is among the class of persons for whose benefit the agreement was made and has standing to raise it as a bar to the present action." (*General Motors Corp. v. Superior Court*, *supra*, 12 Cal.App.4th at p. 444.)

The District would have us apply the opposite rule, found in *Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337 (*Neverkovec*) and its progeny. That case concluded that third parties are not empowered to "'enforce covenants made not for [their] benefit,'" and that a third party's right to enforce performance "'is predicated on the contracting parties' intent to benefit him.'" (*Id.* at p. 348) Thus, essentially, the words of a release alone are insufficient, and the parties' intent must be probed, by the use of extrinsic evidence, to show actual intent to release. (*Id.* at p. 349.)

This reasoning was rejected quite recently by *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020 (*Rodriguez*). The court stated that it had "grave reservations about the reliability of the above passage as a statement of the law applicable to a case where, as here, the contract expresses unambiguously an intent to confer rights on a class of persons including the third party asserting rights under the contract. The gravamen of the passage appears to be that even where the contract plainly expresses an intent to grant rights to the party claiming them, he can only establish those rights by presenting extrinsic evidence sufficient to show that the parties really meant what they said. Such an approach flies in the face of 'the generally applicable law of contracts' [citation]—which, as we have said, determines the parties' intent in the first instance from what they said, and moves on to other evidence only if some recognized ground is shown to do so, such as ambiguity, fraud, mistake, or unconscionability." (*Id.* at p. 1030.)

10

We find *Rodriguez* far more persuasive on this point. The rule advanced by *Neverkovec* would create a significant exception to the general rules of contract interpretation, which exist to advance predictability and reliability in contractual relations. Such an exception is simply unwarranted, and further, this court has previously expressed its preference for the general rule. (See, e.g., *Brinton*, *supra*, 76 Cal.App.4th at p. 559.) Thus, Telex's lack of participation in the settlement agreement is not relevant to whether it is included in the release. We turn next to that issue.

The District claims that references to Gulton in the settlement and good faith proceedings "were simply to clarify that *Mark IV* was receiving a release for any liability that *Mark IV* may have incurred during the time it owned Gulton." But the District's subjective rationale for including references to Gulton in these documents, particularly the settlement agreement, is irrelevant. The settlement agreement stated that "Mark IV's liability, which is denied by Mark IV, is allegedly a result of contamination that occurred as a result of operations at the Property and Mark IV's alleged position *as successor to Gulton*." (Italics added.) The release expressly includes "predecessors" of Mark IV. Whether Mark IV was legally a corporate successor to Gulton is irrelevant — the settlement agreement identified Mark IV as Gulton's successor.[3] When a contract is reduced to writing, it is presumed to contain all of the material terms, and it cannot reasonably be presumed that the parties would intend two contradictory terms to be part of the same agreement. (*Gerdlund v. Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 271.) By the same token, we cannot assume that "successor" meant one thing in one section of the settlement agreement and another thing entirely in the release. By referring to Mark IV as a "successor" to Gulton, the only reasonable reading is that Gulton was a "predecessor" with respect to the release.

---

[3] Also irrelevant is the District's argument that Telex did not claim it was a successor to Mark IV in its discovery responses. Telex was Gulton's successor, not Mark IV's.

11

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) No such absurdity is present here. The District cannot now argue that Mark IV was not Gulton's successor when the settlement agreement expressly identifies Gulton as such. The release includes predecessors, and when Telex and Gulton merged, Telex inherited both Gulton's rights and liabilities.[4]

We also reject the District's argument that interpreting the release as including Telex would create an unfair result. This was an arms-length contract negotiated by sophisticated parties, each of whom was represented by an attorney. If contracts are to serve their purpose of creating stable and predictable business relationships, the parties must be bound by the express terms of the contract. Words have meaning, and that meaning cannot simply be disclaimed by a later cry of "that's not what we meant." Contracts exist to eliminate such uncertainty, and the burden is on the parties when drafting to ensure that all material terms are used with care and deliberation. Thus, contrary to the District's argument, there is no triable issue of fact as to whether Telex was included in the scope of the release. The District has failed to meet its burden, and summary judgment, therefore, was properly granted.

*D. Motion to Tax Costs*

The District argues that Telex adopted "inconsistent positions" that support reversal of the cost award. According to the District, Telex argues on the one hand that it claimed to have been released by the settlement agreement in 2011, and on the other that a memorandum of costs was nonetheless timely after judgment was entered in 2012.

---

[4] The District's position on this is question is, to say the least, muddled. It argues both that Gulton's liabilities transferred to Telex at the time of the merger, yet somehow references made to Gulton in 2011, long after the merger took place, have nothing to do with Telex.

12

This argument, frankly, is somewhat silly, and unsupported by any citation to authority. Telex did, of course, argue that it was released by the settlement agreement executed in 2011. It did not, however, at any point contend that it was actually *dismissed from the case*. Telex contended that it should be dismissed from the case, but that did not occur until its motion for summary judgment. Its motion to tax costs was timely filed after judgment was entered in its favor, and therefore it was not untimely. The only way the memorandum of costs would have been untimely was if the District had voluntarily dismissed Telex from the case after the settlement agreement was executed.

## III

## DISPOSITION

The judgment is affirmed. Telex is entitled to its costs on appeal.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

13